The declaration was for an injury done by the defendants to a milldam which the plaintiff alleged was in his possession. The dam (164) was across a creek that ran through the land on which the plaintiff resided at the time of the alleged trespass. Upon the trial it was in evidence that the defendants went to the plaintiff and informed him that they were authorized to lay off a slope in the dam, and asked his permission to do so; upon which the plaintiff denied that they had any such authority; said that he gave them no permission to do anything which the law did not authorize them to do; and that if they tore away the dam he would sue them. The defendants thereupon proceeded to the dam, and, after a short conference, Gardner, one of them, marked out a slope upon it, when one of the other defendants asked Gardner if they should cut the dam. To this inquiry Gardner replied, "You know your own business; but I am afflicted with rheumatism, and can't go into water." The other defendants then cut away 28 feet of the middle of the dam, down to the mudsill; and whilst this was doing, Gardner was sitting on the bank of the creek, in sight of the scene of operations, and saw, and remarked to another person in company with him, upon what was going on. During the time the defendants were engaged in cutting the dam, the plaintiff came down to the place where Gardner was, and upbraided them for tearing away the dam, after pretending that they only designed to lay off a slope. To this Gardner replied that he had done his best to prevent it; when the plaintiff said that he, Gardner, could have prevented it if he had tried, and that he was the cause of it. In another conversation Gardner said that he could prove by the person *Page 129 
with whom he was sitting that he had nothing to do with it; whereupon one of the other defendants asked him if he did not agree to go his bob;
to which Gardner, after some hesitation, replied: "If you bring me in, I have two or three hundred dollars, which have not yet been spent." It was further in evidence that the plaintiff had a field in cultivation, about 200 yards from the dam; that he had been living on the land several years; that eight or ten years before the alleged trespass there was a mill house connected with this dam, which was possessed and used by him in grinding grain for himself and neighbors; that the mill house was carried away by a freshet, eight or ten years before, (165) and had never been rebuilt; that a few days before the dam was cut, the plaintiff had worked upon and repaired it, preparatory, as he declared at the time, to rebuilding the mill. There was also evidence that the plaintiff had a fish trap at the dam, which was destroyed by the defendants when they cut the dam.
The defendants offered evidence to show that the plaintiff's design in repairing the dam was not to rebuild the mill, but more successfully to catch fish. They also offered in evidence a grant from the State to John G. Blount, dated in 1796, for the land on which the plaintiff lived. The plaintiff offered no evidence of title other than his possession, and the defendants did not pretend that they had any title themselves, nor any authority from Blount to enter upon the land.
The counsel for the defendants contended that the plaintiff was not entitled to recover, because he had shown no possession; and, if entitled to recover anything, he was entitled to nominal damages only, and requested the court so to charge the jury.
His Honor instructed the jury that if they inferred that the mill, before it was carried away, had been in the possession and use of the plaintiff, and that he repaired the dam a few days before the trespass complained of, with the view of repairing the mill, these facts, especially when connected with the evidence that the defendants had applied to the plaintiff for his permission to make a slope upon the dam, established such a possession in the plaintiff as would entitle him to recover; and that he had a right to recover damages to the extent of the injury which the dam had sustained; and that all the defendants who had aided, abetted, counseled, or commanded the trespass, or who had assented to it after it was done, were equally liable with those who actually committed the act complained of. The plaintiff had a verdict and judgment against all the defendants, and they appealed.
We see no ground on which this judgment can be impeached. It is not to be questioned but that possession alone is sufficient *Page 130 
(166) to maintain an action of trespass against mere tort feasors. The evidence to show possession in the plaintiff was pertinent, direct, and uncontradicted. And in trespass, all procurers, aiders, and abettors — nay, those who are not even privy to the commission of a trespass for their use and benefit, but who afterwards assent to it — are in judgment of law principals. Com. Digest, Tres., C. 1; 4 Inst., 317.
PER CURIAM. No error.
Cited: Winder v. Blake, 49 N.C. 337; London v. Bear, 84 N.C. 274;Gwaltney v. Timber Co., 115 N.C. 585; Stevens v. Smathers, 124 N.C. 573.